UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

April Leah Wagner,

       Plaintiff,                          Case No. 2:15-CV-00029

v.                                         Hon. R. Allan Edgar

Carolyn W. Colvin,
Commissioner of Social Security,

       Defendants.
_____/

## OPINION

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act on August 8, 2011. *See* Transcript of Administrative Hearing at page 9 (hereinafter Tr. at ___). Plaintiff alleges that she became disabled on July 6, 2011.[1] Tr. at 9, 11. On March 1, 2012, Plaintiff's application was denied, and upon reconsideration was denied again later that same day. Tr. at 9. On March 23, 2012, Plaintiff filed a written request for an administrative hearing before an Administrative Law Judge (ALJ). *Id.* The ALJ held a video hearing on September 5, 2013. *Id.* At the hearing, Plaintiff was represented by counsel. *Id.* Testifying at the hearing were Plaintiff and vocational expert Margaret H. Ford. *Id.* In a decision issued on October 22, 2013, the ALJ denied Plaintiff's claim for benefits. Tr. at 9, 21. Plaintiff appealed the decision to the Appeals Council, which denied her request for review on December 15, 2014. Tr. at 1-3. Plaintiff then filed this action on February 16, 2015. Docket # 1.

Plaintiff suffers from alcohol and drug addiction, a back disorder, and several

---

[1] Initially, Plaintiff's alleged onset date was January 16, 2008; however, she amended the onset date to July 6, 2011, at her trial. Tr. at 9, 11.

mental disorders. Tr. at 11. Plaintiff has worked sporadically since the eighties, but most important to her disability claim is the fact that she was assistant manager of a furniture store for a couple of years. Tr. at 32-35, 52. Plaintiff has not engaged in substantial gainful activity since July 6, 2011, when she blew out a disc while attempting to move a television. Tr. at 29-30, 35, 38. Since that time, Plaintiff has had other intervening personal injuries. Tr. at 38. For example, one day Plaintiff took off her left leg brace and walked to the mailbox, at which time she fell and blew out another disc. Tr. at 38-39. Plaintiff testified that she cannot bend, kneel down to clean a toilet, push a vacuum, clean out the fridge, or walk further than half a block. Tr. at 43, 49. She stated that when she shops, she can only go two aisles at a time before she has to go back to the car and sit down. Tr. at 44. Plaintiff indicated that she gets along with everyone, and she can knit, play cards, and make jewelry. Tr. at 45. In addition, she can manage her finances and pay the bills. Tr. at 46.

Vocational expert Margaret Ford testified at the hearing and was asked to evaluate Plaintiff's past relevant work. Tr. at 53. She testified that Plaintiff's assistant manager position was a skilled position. *Id.* The ALJ asked Ms. Ford two hypotheticals to assess Plaintiff's ability to perform jobs with varying skill and exertional levels. The first hypothetical scenario asked if a person of Plaintiff's age, education, and past work experience with the following conditions would be capable of performing the work required of a furniture store manager: unable to lift and carry more than 20 pounds; unable to stand and walk more than two hours in an eight-hour day; need to sit or stand at-will; require a cane for prolonged ambulation; unable to push and pull with bilateral extremities; unable to climb ladders and scaffolds, unable to climb stairs, balance, stoop, kneel, crouch, or crawl more than occasionally; unable to perform fine manipulation with right

upper extremity more than frequently; need to avoid even moderate exposure to hazards; unable to maintain the attention or concentration needed to perform detailed or complex tasks; and unable to have more than occasional interaction with coworkers and supervisors.  Tr. at 54-55.  Ms. Ford stated that this person would not be able to perform Plaintiff's past work, but that there were sedentary positions available in Michigan that this sort of person could perform, for example: final assembler (950 jobs locally), table worker (1,160 jobs locally), preparer (920 jobs locally). Tr. at 55-56.  The next hypothetical included the previous limitations, as well as the conditions of: unlimited breaks; undetermined duration; and four or more absences in a work month.  Tr. at 56.  Ms. Ford testified that these additional conditions would preclude a person from engaging in any competitive employment. *Id.*

The ALJ determined that Plaintiff suffers from polysubstance abuse (alcohol and marijuana), a back disorder, anxiety disorder, affective disorder, and personality disorder. Tr. at 11.  Based on these conditions and the ALJ's determination of Plaintiff's physical and mental capabilities, the ALJ concluded that Plaintiff could not perform her past relevant work.  Tr. at 20.  However, the ALJ concluded that there were other jobs existing in significant numbers in the state economy that Plaintiff could perform.  *Id.*.

Plaintiff filed an appeal in this Court on February 16, 2015 (docket # 1), alleging that the ALJ's decision to deny social security benefits to Plaintiff was improper because the ALJ wrongly afforded little weight to Plaintiff's treating physician, Plaintiff's consultative physician, and Plaintiff's testimony. Docket # 18. Defendant Commissioner of Social Security filed a Response on October 14, 2015. Docket # 21.  Plaintiff filed a Reply on October 28, 2015. Docket # 22.  The matter is now ready for a decision.

I.

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step,

4

the analysis ceases and Plaintiff is declared as such. 20 C.F.R. § 404.1520(a). Steps four and five use the residual functional capacity assessment in evaluating the claim. *Id.*

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from her amended alleged onset date of July 6, 2011, through her date last insured of March 31, 2013. Tr. at 11; *see* 20 C.F.R. § 404.1520(b). At step two, the ALJ determined Plaintiff has the following severe impairments: polysubstance abuse (alcohol and marijuana); back disorder, following an injury on July 6, 2011, status-post two surgeries in July 2011 and again in July 2012; anxiety disorder; affective disorder; and personality disorder. *Id*. At step three, the ALJ determined Plaintiff's impairments or a combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. Tr. at 12-18. At step four, the ALJ determined Plaintiff has the residual functional capacity (RFC) to perform sedentary work, as defined in 20 C.F.R.§ 404.1567(a), with the additional limitations: unable to lift/carry more than 10 pounds; unable to stand and/or walk more than two hours per eight-hour workday; need to sit/stand at will throughout the workday; requires a cane for prolonged ambulation; unable to push/pull with the bilateral lower extremities; unable to climb ladders, ropes, or scaffolds; unable to climb stairs, balance, stoop, kneel, crouch, or crawl more than occasionally; unable to perform fine manipulation with the right upper extremity more than frequently; need to avoid even moderate exposure to hazards; unable to maintain attention or concentration necessary to perform detailed or complex tasks; and unable to have more than occasional interaction with coworkers, supervisors, or the public. Tr. at 13. At step five, the ALJ concluded that Plaintiff could not perform her past relevant work, but that there were jobs available in significant numbers in the

state economy that Plaintiff could perform, such as: final assembler (950 jobs locally), table worker (1,160 jobs locally), and a preparer (920 jobs locally), for example. Tr. at 20-21. Therefore, the ALJ held that Plaintiff was not disabled during the time period from her alleged onset date through her date last insured. Tr. at 21.

II.

Plaintiff contends that the ALJ committed reversible error by (1) not properly considering the opinion of Plaintiff's treating physician, (2) not properly weighing the opinions of the consultative psychologist, and (3) by making unsupported conclusions about Plaintiff's credibility. Docket # 18 at 18. Upon review of the evidence of record, this Court affirms the ALJ's conclusions.

**A. Treating Physician**

First, Plaintiff claims that the ALJ committed reversible error by not properly considering the opinion of Plaintiff's treating physician, Dr. Virginia Feleppa. Tr. at 18. An ALJ affords a treating physician's opinion controlling weight when the evidence and findings are consistent with the other substantial evidence on record. 20 C.F.R. § 1527(c)(2). Only when the ALJ does not afford great weight to a treating source's opinion is the ALJ required to apply and conduct an analysis of the factors under (c)(2)(i) and (c)(2)(ii), and (c)(3) through (c)(6). *Id.* Moreover, an ALJ is not required to rely on medical opinions concluding that a person is, or is not, disabled since that is an issue reserved to the Commissioner. 20 C.F.R. § 1527(d).

Regarding Dr. Feleppa's opinion, the ALJ said the following in his decision:

> Virginia Feleppa, M.D., completed a Medical Examination Report on October 11, 2011. According to Dr. Feleppa, examinations showed an antalgic gait and a broad-based stance, and she indicated that the claimant should be using a cane for ambulation. Dr. Feleppa also

6

indicated findings including brisk knee reflexes, absent ankle reflexes, and decreased sensation in the lower extremities. Dr. Feleppa opined that the claimant was unable to meet needs in the home, due to "difficult[ly]" [sic] with cooking and cleaning, but she ultimately indicated that the claimant's condition was stable. In a Functional Capacity Questionnaire dated March 13, 2012, Dr. Feleppa offered her opinion that the claimant could lift/carry no more than 10 pounds rarely and that she could sit, stand, and/or walk no more than a total of two hours in an eight-hour workday. Dr. Feleppa also opined that the claimant could never stoop, bend, or crouch, and that she could only occasionally finger, grasp, and handle. According to Dr. Feleppa, the claimant's pain would interfere with attention and concentration on an occasional basis, and she was likely to miss at least four days of work per month, due to her condition.

If a treating source's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. However, controlling weight may not be given to a treating source's medical opinion unless the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record (20 CFR 404.1527(d)(2) and 416.927(d)(2) and SSR 96-2p). A finding that a treating source's medical opinion is not entitled to controlling weight under the above criteria does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator (SSR 96-2p).

In deciding whether or not to adopt the treating source's opinion in this situation, the following factors are to be considered along with any other appropriate factors: the examining relationship, the treatment relationship in terms of its frequency and duration, supportability, consistency, and specialization. Particular attention is to be given to the consistency of the opinion with other evidence, the qualifications of the source, and the degree to which the source offers supporting explanations for the opinion (20 CFR 404.1527(d) & (f) and 416.927(d) & (f); SSR 96-2p).

Applying the above principles, the undersigned finds that Dr. Feleppa's opinion is not entitled to controlling or deferential weight under the Regulations. Although Dr. Feleppa saw the claimant on approximately a monthly basis following her surgeries, the undersigned gives little weight to her assessment, because it is not fully supported by objective signs and findings in the preponderance of the record. Dr. Feleppa's opinion regarding the claimant's abilities

>       for lifting, standing, walking, and sitting are not materially
>       inconsistent with the residual functional capacity above for a reduced
>       range of sedentary work. However, her opinion that the claimant
>       could never perform certain postural activities and occasionally use
>       her hands are unsupported by objective findings. After the claimant's
>       first surgery in July 2011, Dr. Feleppa noted some peripheral
>       neuropathy, but she consistently stated that the claimant was
>       improving. The limitations above for frequent right-sided fine
>       manipulation adequately accounts for the claimant's right-sided
>       parathesia. Further, as noted above, in August 2012, shortly after the
>       second surgery, Dr. Feleppa stated that the claimant was doing well.
>       The record shows no further treatment with Dr. Feleppa after that
>       time. Moreover, Dr. Feleppa's opinion that the claimant would likely
>       miss four days of work per month is speculative and unsupported by
>       objective findings. For all of these reasons, the undersigned gives
>       little weight to Dr. Feleppa's assessment.

Tr. at 17-18 (citations omitted). The ALJ's decision to afford Dr. Feleppa's medical opinion little weight is thorough and complete.

Plaintiff's only argument to support her allegation that the ALJ's decision to afford Dr. Feleppa's opinion little weight was improper is that the ALJ chose to rely on the opinions of non-examining and non-treating sources rather than the treating source's opinion (Dr. Feleppa). Docket # 18 at 20. However, after reading the ALJ's decision and above-mentioned excerpt, it is clear that the ALJ afforded Dr. Feleppa's decision little weight because of the inconsistences between her opinion and the other objective findings on record. Tr. at 17-18. Therefore, based on the ALJ's reasoned decision and upon review of the medical opinions and evidence of record, it is clear that the ALJ did not improperly afford little weight to Dr. Feleppa's medical opinion.

### B. Consultative Psychologist

Next, Plaintiff claims that the ALJ committed reversible error by not properly weighing the opinions of the consultative psychologist, Dr. Barbara Halazon. Docket # 18 at 20-

21. Important to note at the outset, however, is the fact that the consultative reports that Plaintiff refers to in her brief are joint reports done by both Dr. Margaret Cappone and Dr. Barbara Halazon. Tr. at 264-69; 371-77. Regarding these reports, the ALJ stated the following in his decision:

> Regarding the claimant's mental impairments, consultative psychologist Dr. Cappone [and Dr. Halazon] evaluated the Claimant on April 18, 2010. Dr. Cappone offered her opinion that the claimant could understand one- and two-part directives, as well as "more complex" directives. Dr. Cappone also opined that the claimant would be "quite perceptive" to criticism, that she would have difficulty with interpersonal relationships, and that boundary issues might lead to disruptive behavior and inconsistency. Dr. Cappone offered a similar opinion when she re-evaluated the claimant on December 16, 2011. Dr. Cappone also opined that the claimant may have difficulty with sustaining and persisting in a job situation and that the claimant's chronic substance abuse "may be evident" within a job situation.

Tr. at 18 (citations omitted). After reviewing these reports, the ALJ ultimately adopted the findings of the BDD consultative and reviewing psychologist Dr. Michele Leno:

> BDD reviewing psychologist Michele Leno, Ph.D., completed a mental residual functional capacity assessment on December 21, 2011. Dr. Leno offered her opinion that the claimant retained the mental capacity to perform simple tasks and instructions at a sustained pace. Dr. Leno also found moderate impairments in the claimant's ability to interact appropriately with the general public and to respond appropriately to supervisors.
>
> The undersigned has essentially adopted the findings of the BDD consultative and reviewing psychologists and has imposed limitations in areas of moderate impairment as identified by them. The undersigned gives significant weight to their assessments, as they are supported by objective signs and findings upon examination and in the preponderance of the medical record, including those records submitted after their assessments. The limitations above for regarding complex tasks and occasional social interaction adequately accounts for the claimant's moderate impairment in the ability to maintain social functioning and to maintain concentration, persistence, or pace.

>Further, no treating mental health source has provided an opinion to the contrary that the claimant was "disabled" or more limited than set forth above.

Tr. at 19 (citations omitted). Notably, Dr. Leno indicated in her report that she afforded "great weight" to the opinion of Dr. Cappone (and therefore also Dr. Halazon) when evaluating Plaintiff's disability status and concluding that she was not disabled. Tr. at 70. Therefore, it is clear that the ALJ considered and afforded great weight to the opinion of Dr. Halazon in making his RFC determination, rather than dismissing her opinion entirely as Plaintiff suggests was done. Docket # 18 at 20-21.

Despite this information, Plaintiff further contends that because the ALJ did not follow the Global Assessment Functioning (GAF) scores assigned by Dr. Halazon (40-48), that the ALJ improperly ignored Dr. Halazon's opinion. Docket # 18 at 20. Regarding Plaintiff's GAF, the ALJ stated:

>Although some of the claimant's GAF scores in the record are at 50 or below, the undersigned gives little weight to these scores. The global assessment of functioning is only a subjective estimate by a clinician of the claimant's status in the preceding two weeks, and these scores were provided prior to the amended alleged disability onset date, when the claimant had not been in treatment, or when the claimant had been using alcohol. The undersigned finds that the preponderance of the examination findings from the claimant's treating and examining sources supports a reasonable inference that the claimant experienced no more than moderate difficulties functioning.

Tr. at 19 (citations omitted). A GAF score is "a clinician's subjective rating of an individual's overall psychological functioning." *Kennedy v. Astrue*, 247 Fed. App'x 761, 766 (6th Cir. 2007); *DeBoard v. Comm'r of Soc. Sec'y*, 211 Fed. App'x 411, 413 n.1 (6th Cir. 2006) (citations omitted) ("The Global Assessment Functioning score rates 'overall psychological functioning' on

10

a scale of 0 to 100, with a score of 100 indicating 'superior functioning.'").  This score "may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy*, 247 Fed. App'x at 766 (citing *Kornecky v. Comm'r of Soc. Sec'y*, 167 Fed. App'x 496, 503 (6th Cir. 2006)).  The Sixth Circuit has held that "failure to reference a Global Assessment Functioning score is not, standing alone, sufficient ground to reverse a disability determination," because, while the score may be helpful, it is not essential in order to determine a person's RFC.  *DeBoard*, 211 Fed. App'x at 415 (citing *Howard v. Comm'r of Soc. Sec'y*, 276 F.3d 235, 241 (6th Cir. 2002)).

Furthermore, the Commissioner has declined to endorse GAF scores "for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that [Global Assessment Functioning] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *DeBoard*, 211 Fed. App'x at 415 (quoting *Wind v. Barnhart*, 133 Fed. App'x 684, 692 n.5 (11th Cir. 2005)). As a result, the Sixth Circuit has denied disability benefits even when an applicant has a GAF score of 50 or below. *See id.* (citing *Smith v. Comm'r of Soc. Sec'y*, 74 Fed. App'x 548 (6th Cir. 2003) (noting GAF score of 48); *Nierzwick v. Comm'r of Soc. Sec'y*, 7 Fed. App'x 358 (6th Cir. 2001) (noting GAF score of 35); *Thurman v. Apfel*, 211 F.3d 1270 (6th Cir. 2000) (noting GAF score of 50)).

Here, Plaintiff argues that the ALJ improperly dismissed the GAF score provided by Dr. Halazon, and "arbitrarily" determined that Plaintiff's "mental impairments were not disabling."  Docket # 18 at 20-21.  However, upon reading the ALJ's decision, it is clear that the ALJ considered Plaintiff's scores of 50 or below, but decided to afford those scores little weight

since the scores came from dates prior to Plaintiff's amended alleged onset date. Tr. at 19 ("[T]hese scores were provided prior to the amended alleged disability onset date, when the claimant had not been in treatment, or when the claimant had been using alcohol."). Since the ALJ is not required to rely on GAF scores to make an RFC determination, and scores of 50 or below are not automatic indicators that a person is mentally disabled, this Court affirms the findings of the ALJ. *See DeBoard*, 211 Fed. App'x at 415 (stating GAF scores of 50 or below may still result in denial of disability benefits).

### C. Plaintiff's Credibility

Finally, Plaintiff claims that the ALJ committed reversible error by making unsupported conclusions about Plaintiff's credibility. Docket # 18 at 21. When an ALJ evaluates an individual's complaints of pain and disabling symptoms, the ALJ may consider the credibility of the person. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* (citing *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). An ALJ's determination of a Plaintiff's credibility must be supported by substantial evidence. *Id.*; *Winslow*, 566 Fed. App'x at 422. Simply stating that Plaintiff has pain or other symptoms is not sufficient to establish that the individual is disabled. *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)). The ALJ must assess an individual's pain by using a two prong test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

> established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* (referencing *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)); *see also* 20 C.F.R. § 404.1529(a). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531 (citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)). An ALJ can also consider an individual's ability to do household and social activities when assessing the credibility of a person's alleged pain and disabling symptoms. *Id.* at 532.

In determining that Plaintiff's allegations of pain and disabling symptoms were less than credible, the ALJ identified several inconsistencies between Plaintiff's testimony and the evidence provided. In so doing, the ALJ first evaluated and considered Plaintiff's testimony in his decision:

> The claimant asserted that she is unable to work due to back pain, lower extremity weakness, a thyroid problem, depression, and anxiety. She said her medications caused sweats, shakiness, and lightheadedness. According to the claimant, her symptoms affected her ability to lift, walk, climb stairs, squat, bend, stand, reach, sit, kneel, use her hands, concentrate, complete tasks, get along with others, and handle stress. She indicated in August 2011 that she used a walker and a wheelchair for ambulation, and she testified at the hearing that she primarily used a cane for ambulation. She also testified that she was unable to lift any significant amount of weight, that she could stand no more than 20 minutes at a time, and that she usually sat with a pillow.
>
> Regarding activities of daily living, the claimant reported that she lived in a house with her husband and usually lied on the couch and watched television for most of the day. She also said she had to lie down for several hours each day. She complained of difficulty

> sleeping at night, due to pain and numbness. The claimant indicated difficulty with activities of personal care, such as bathing and dressing. She said she could prepare simple meals for herself and do some cleaning, although these activities took longer than normal. According to the claimant, she was unable to leave her home without assistance, and her husband did most of the shopping. She said she talked on the phone daily and visited with friends twice per week. She said she also spent time with or talked on the phone to her children and grandchildren. She said she enjoyed camping and fishing, although ambulation difficulties affected these activities; she testified that she enjoyed knitting and playing cards, although she was unable to sit for long periods of time. She said she did not have a driver's license, but only because it was suspended following a drunk driving charge.

Tr. at 14 (citations omitted). Despite Plaintiff's above-mentioned allegations, the ALJ determined that Plaintiff's testimony regarding her pain and disabling symptoms was not credible:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment, for the reasons explained in this decision.
>
> The claimant's assertion that she has not been able to work at any time since the alleged disability onset date is not supported by objective medical evidence. Although the claimant has had two spinal surgeries, she recovered well after both procedures, to the extent she is capable of performing the reduced range of sedentary work set forth above. Regarding the first surgery on July 24, 2011, as early as July 29, 2011, the date of the claimant's discharge following surgery, attending physician Carl Eiben, M.D., stated that the claimant had made "excellent progress" from a rehabilitation standpoint. The claimant saw Dr. LaHaye in follow-up, and as early as August 16, 2011, Dr. LaHaye reported that the claimant had manifested "dramatic" neurologic recovery less than one month after surgery. On October 11, 2011, Dr. LaHaye again stated that the claimant had enjoyed "dramatic" neurologic recovery. According to Dr. LaHaye, the claimant complained of only some numbness in the great toes, but she was currently independently ambulatory and only intermittently wore her AFO braces. He also noted that he and the claimant were

"very happy" with her surgical results. Although the claimant walked with a cane and complained of right upper extremity parathesias on February 14, 2012, Dr. LaHaye reported that the physical examination showed some decreased strength in the lower extremities but no motor weakness. He noted that findings upon a recent cervical spine MRI were only mild in nature and would not explain her symptoms. He recommended only physical therapy and said she had experienced a "dramatic recovery."

The claimant's complaints of disabling mental symptoms, even when considering her substance abuse, are also unsupported by objective medical evidence. When consultative psychologist Dr. Cappone evaluated the claimant on April 18, 2010, the claimant complained of worthlessness and suicidal ideation. Dr. Cappone noted a dysthymic mood with some high motor activity and low motivation and insight. However, Dr. Cappone otherwise documented a pleasant demeanor, logical and organized speech, and no evidence of delusions or hallucinations. As for cognitive functioning, the claimant was unable to report any current events, but she exhibited adequate memory and performed Serial 7 calculations steadily and with no difficulties. Dr. Cappone noted similar findings, including a mildly flat presentation, during a subsequent consultative psychological evaluation on December 16, 2011.

The claimant's treatment history is also inconsistent with a finding of disabling mental symptoms. The claimant told Dr. Cappone in April 2010 that she was not currently receiving any psychological or psychiatric treatment, and the record shows no outpatient mental health treatment after that time. The record also shows no mental health-related emergency room visits or psychiatric hospitalizations, and the claimant did not participate in any substance abuse treatment programs during the relevant time period. The claimant's limited mental health treatment casts some doubt on her allegations about the severity of symptoms she experienced after the alleged onset date of disability and prior to the date last insured.

Moreover, the claimant's descriptions of daily activities is inconsistent with her complaints of disabling symptoms and limitations. At the consultative psychological evaluation on April 18, 2010, the claimant told Dr. Cappone that she did not do much during the day, but she also said that she cooked, cleaned, and helped out her daughter during the day. She said she had a good relationship with her daughter and grandchildren. The claimant also said she had one friend whom she saw on a daily basis; she said they read and played cards

together. On December 16, 2011, the claimant said she was unable to cook or clean, but she said she regularly visited her daughter, during which time she played cards and played with her grandchildren. She also said she enjoyed knitting. Such evidence further supports a finding that the claimant remains capable of performing work involving the reduced range of sedentary exertion described above.

The claimant's credibility is further reduced by inconsistent statements in the record. Although the claimant denied any drug use during emergency room visits for alcohol intoxication in February and July 2009, urinary drug screens on both occasions were positive for cannabinoids. The claimant told consultative psychologist Dr. Cappone on December 16, 2011, that she had not used alchol [sic] since her surgery (i.e., since July 2011), but only a few months earlier, on October 11, 2011, she told Dr. Feleppa that she drank three to four beers three to four times per week. Moreover, Dr. Cappone specifically stated that, although the claimant said she was abstinent from alcohol, she presneted [sic] with a "noticeable" smell of alcohol about her. Although the claimant may not have consciously intended to provide misleading statements, the inconsistencies suggest that her information may not be entirely reliable.

The undersigned cannot reasonably infer that the claimant stopped working on the alleged onset date solely due to her impairments. The claimant testified that she did not work much in the past and that she was "pretty much" a "stay at home mom." Thus, it is reasonable to infer that the claimant's lack of employment is not necessarily due to any disabling impairments. For these reasons, and for the other reasons discussed above, the undersigned finds that the claimant's complaints of disabling symptoms are not fully credible.

Tr. at 14-17 (citations omitted). The ALJ's assessment of Plaintiff's pain and disabling symptoms is thorough and complete, and there is substantial evidence to support the ALJ's conclusion that Plaintiff's allegations were inconsistent with the medical evidence on record.

Despite this thorough analysis, Plaintiff claims that the ALJ improperly found her to be unreliable because she has a drinking problem and was a stay at home mom.[2] Docket # 18 at

---

[2]Plaintiff states in her brief that her drinking was improperly considered by the ALJ. Docket # 18. Plaintiff testified that she cannot drink, and had not drank for four months prior to the hearing. Docket # 18 at 19. She said she quit because the medication she was on was not supposed to be consumed with alcohol. *Id.* However, when the

21. However, Plaintiff's claim is conclusory and undeveloped. Moreover, it is obvious that after a thorough reading of the ALJ's decision that his conclusion that Plaintiff was not fully credible was not the result of her having a drinking problem or being a stay at home mom. Rather, Plaintiff's credibility determination was based on the inconsistencies between her testimony and allegations, and the objective medical evidence of record. Tr. at 14-17; *see Walters*, 127 F.3d at 531 (noting the ALJ may discount the claimant's credibility when he finds contradictions between the claimant's testimony, medical records, and other evidence); *see also Heston v. Comm'r of Soc. Sec'y*, 245 F.3d 528, 536 (6th Cir. 2001) (noting the ALJ determined the claimant's subjective complaints were not credible in light of her ability to perform other tasks).

Overall, there is substantial evidence on the record to support the ALJ's determination that Plaintiff was not fully credible in her allegations. Therefore, this Court defers to the ALJ's credibility determination. *See Jones*, 336 F.3d at 475 (noting when there is sufficient medical evidence to support the ALJ's finding, this Court does not overturn the ALJ's decision, even if evidence supports a different conclusion).

III.

Plaintiff's request to remand this case to the Social Security Administration pursuant to Sentence Four or Six of 42 U.S.C. § 405(g) is denied. There is substantial evidence in the record that supports the Commissioner's decision that Plaintiff was not disabled as defined by the Social Security Administration. In addition, Plaintiff has not provided new or previously

---

ALJ asked if she had drank alcohol prior to four months ago, she said yes; and when asked if she was taking medication that was not supposed to be consumed with alcohol four months ago, she said yes. Tr. at 35. Therefore, the *reasons* that Plaintiff provided to the ALJ for saying that she was sober are inconsistent with her actions. Thus, the ALJ did not improperly consider Plaintiff's drinking; rather, he simply used her inconsistent testimony about her drinking to further exemplify why he did not find Plaintiff to be fully credible.

unavailable evidence to support her claim. *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) (noting that new evidence is that which did not exist or was unavailable at the time of the hearing). In fact, Plaintiff makes no argument that she has new and material evidence for the courts to consider on remand. Instead, Plaintiff argues that her previously admitted evidence was improperly considered by the ALJ. Consequently, this Court concludes the Plaintiff has not met her burden to grant a reversal or remand in his case pursuant to Sentence Four or Six of 42 U.S.C. § 405(g).

Accordingly, the decision of the Commissioner is **AFFIRMED** (docket # 21) and Plaintiff's request for relief is **DENIED** (docket # 18).


Dated: 11/9/2015

                                              __/s/ *R. Allan Edgar*_____
                                              R. ALLAN EDGAR
                                              UNITED STATES DISTRICT JUDGE